DAVID MYERS
4907 RIMWOOD DR
FAIR OAKS. CA. 95628
916-967-2565
Defendant, In Pro Per

# FILED

**JAN 1 2 2012**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK



## IN THE UNITED STATES DISTRIC COURT
## EASTERN DISTRICT OF CALIFORNIA

DAVID MYERS

     Plaintiff(s)

    Vs.

Winn Law Group, APC: Brian N. Winn:

Naomi S. Rust, Laura M Hoalst, John E.

Gordon, Dana L. Ozols, Stephen S Zeller,

Discover Card

Defendants

_____

No.: 211-CV-2372 JAM KJN PS

**FIRST AMENDED COMPLAINT**

  PLAINTIFF, DAVID MYERS ,  individually, hereby sues each Defendant: Winn Law Group,
APC Brian N. Winn , Individually; Naomi S. Rust Individually; Laura M Hoalst
Individually,John E. Gordon Individually, Dana L. Ozols, Individually, Stephen S Zeller
Individually: and Discover Card for violations of the Fair Debt Collection Practices Act
(FDCPA)15 U.S.C. § 1692, and FCRA Fair Credit Reporting Act 15 U.S.C. § 1681 – FCRA no
permissible purpose for pulling credit report and obtaining information under false pretenses.

## PRELIMINARY STATEMENT

### History of abuse

This case stems for a suit filed by Mann Bracken LLP in June 2009 Case number 34-2009-
00046789. in Superior Court of California County of Sacramento. A law firm that had to file
bankruptcy, as they were put out of business by the Georgia Attorney General one of the frauds
committed by this law firm and has a history of bad Substitute services of people who do not

exist. I was one of those victims myself. My summons and complaint says served on Lisa Myers Co-resident Approx. 40.45 years of age 5'4 140-160 pounds brown hair. No one in my house hold matches that description. My wife's name is not Lisa is 5'3" weights 110lbs with black hair just to set the record straight. I objected to the service as I believe it was bogus and should have been void. Mann Bracken was forced out of business for this and many other reasons. Winn Law Group sent me a Substitution of Attorney on or about May 16 2010 and took over that case, I believe he purchased this from Mann Bracken. Look forward to discovery.

1. This is an action for damages brought for damages and for injunctive relief brought by Plaintiff, DAVID MYERS against each named Defendant for violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 *et seq.* and FCRA Fair Credit Reporting Act 15 U.S.C. § 1681b (f) FCRA

2. Upon belief and information, Plaintiff  DAVID MYERS contends that many of these practices are widespread for some or all of the Defendants. The Plaintiff intends to propound discovery to each Defendant identifying these and other individuals as well.

3. The Plaintiff, DAVID MYERS contends that the Defendants have violated such laws by repeatedly harassing Plaintiff in attempts to collect alleged but nonexistent debt.

JURISDICTION AND VENUE

4. Jurisdiction for this court arises pursuant to 15 U.S.C.1 692k(d),which states that such Actions may be brought and heard before" any appropriate United States District Court without regard to the amount in controversy."

5. Defendant conduct business in the State of California, and therefore, personal jurisdiction is established.

6. Venue is proper pursuant to 28 U.S.C. 1391(b)(1).

7. Declaratory relief is available pursuant to 28 U.S.C.2 20I and 2202.

6. This is an action for damages which exceed $24,618.43

**PARTIES**

7. Plaintiff, DAVID MYERS, is a natural person and is a resident of the State of California.

8. Upon information and belief Defendant, DISCOVER Bank NA  is a United States Corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 502 E Market St Greenwood DE 19950  DISCOVER BANK, N.A., is an entity known to do business in the State of California, and has a business interrelationship with all the Defendants.

9. Upon information and belief Defendant, LAW OFFICES OF WINN LAW GROUP APC., a California for Profit Corporation, and known entity authorized to do business in California, and has a business interrelationship with all the Defendants.

10. Upon information and belief Defendant, BRIAN N. WINN, Bar#86779 Individually, is a natural person and is a resident of the State of California and has an interrelationship with all the Defendants

11. Upon information and belief Defendant, LAURA M HOALST, Bar#101082 Individually, is a natural person and is a resident of the State of California and has an interrelationship with all the Defendants

12. Upon information and belief Defendant, John E. Gordon, Bar#180053 Individually, is a natural person and is a resident of the State of California and has an interrelationship with all the Defendants

13. Upon information and belief Defendant, DANA L. OZOLS, Bar#250416 Individually, is a natural person and is a resident of the State of California and has an interrelationship with all the Defendants

14. Upon information and belief Defendant, STEPHEN S ZELLER, Bar#265664 Individually, is a natural person and is a resident of the State of California and has an interrelationship with all the Defendants

15. Upon information and belief Defendant, Naomi S. Rust, Individually, is a natural person and is a resident of the State of California and is the Records Custodian and is an acting officer of Defendants  and has an interrelationship with all the Defendants.

## FACTUAL ALLEGATIONS

16. It is the Plaintiff's observation and opinion that NO California Court should be enabling the Defendants to violate neither the Fair Debt Collection Practices Act or the Fair Credit Reporting Act.

17.On June 30, 2011, the Plaintiff, DAVID MYERS in doing a personal credit report check discovered violations by Defendants under the Fair Credit Reporting Act (FCRA) 15 U.S.C. §1681 *et seq*. By requesting my credit report twice. Once on 12/29/2009 and again on 10/12/2010 without a permissible purpose.

18. The Plaintiff, DAVID MYERS, does not have a contract with any of the Defendants and has never done business with the Defendants. Nor has the Plaintiff ever been in communication of any type with any of the Defendants prior to the violations of the Defendants.

19. The Defendants actions at all times are based upon their willful false and misleading representations (U.S.C. 15 § 1692e) reporting companies Experian, Equifax, Trans Union, the United States Postal Service and the California State Courts .

20. Back on July 13, 2009, the Defendants  LAW OFFICES OF BRIAN N. WINN, WINN LAW GROUP , initiated a non-permissible pull of the Plaintiff, DAVI MYERS personal credit report from Experian in violation of the Fair Credit Reporting Act (FCRA) 15 U.S.C. §1681 *et seq*. And thereby reducing DAVID MYERS personal credit score.
i. The Defendants willfully violated (FCRA) 15 U.S.C. §1681b (f) *by obtaining Plaintiff's consumer report without a permissible purpose as defined by15 U.S.C. §1681b*.

ii. Obtaining information under false pretenses is a criminal violation as described in (FCRA) U.S.C. 15 §1681q. *Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under title 18, imprisoned for not more than 2 years, or both.*

21.Plaintiff, DAVID MYERS mailed on or about May 10th 2010  to the Defendants via Returned Mail United States Postal Service a Certificate of Service of **"letter of dispute** " pursuant to 15 USC.§ 1692g(b).

22. Although the Defendants acknowledged receipt of said certificate of service Notice of Dispute on May 17, 2010, the Defendants willfully neglected to respond directly to the Plaintiff and continued to violate Federal and Florida State laws in attempting to collect an alleged or disputed debt.

30. On May 25, 2009, DAVID E MYERS, again mailed with certified mail to the Defendants, this time with a **debt collection disclosure statement SEE Exhibit "A".**

31. On June $23^{th}$ 2010 DAVID MYERS again mailed by certified mail asking for Validation of debt with no response to that request SEE **Exhibit B**

33. DAVID MYERS does not have nor ever had any "contractual obligation" to pay any of the Defendants for any alleged debt.

34. Each of the Defendants has failed to attach the alleged member agreement(s) or any evidence that Plaintiff ever had any account with any of the Defendants.

35. The Defendants through the filing of their false and misleading representation willfully violated U.S. Federal and California State debt collection practices act laws by continuing to attempt to collect an alleged debt prior to the validation and verification.

36.The Defendants willfully used letters and other documents as false representation in an attempt to collect an alleged or disputed debt via the United States Postal Service which could be construed as fraud and Extortion. These violations continued from the Defendants on each of the following dates: May 17,2010,and June 4 2010,June 29,2010,and July 6 2010,August 2, 2010again in September and again on October 19 2010

37. Willfully the Defendants have asserted a right which they lack, to wit, the right to enforce a debt against the Plaintiff on each of the following dates May 17,2010,and June 4 2010,June 29,2010,and July 6 2010,August 2, 2010again in September and again on October 19 2010

38. Then on October 19, 2010, the Defendants continuing to use false and misleading representations (U.S.C. § 1692e) and other violations of the Fair Debt Collection Practice Act and the Fair Debt Collection Practices Act were unjustly granted a Judgment in the amount of $16,546.56 in the Sacramento Superior Court of California,  and is now being reflected negatively on two of the Plaintiff's credit reports.

39.Plaintiff, DAVID MYERS contends that the illegal actions of all the Defendants have harmed and continue to harm the Plaintiff, resulting in duress, credit denials, credit delays, inability to apply for credit, financial loss, loss of use of funds, mental anguish, humiliation, a loss of reputation, plus the expenditures for a paralegal. $360.00

40. Each Defendant therefore is in violation of Fair Debt Collection Practices Statutes Article 2.7(6) , which are a condition precedent and applies to those entities receiving assignments of consumer debts and, having failed to comply by providing notice to Plaintiff within 30 days after assignment. The Defendants are precluded as a matter of law from bringing an action in any court of California.

## INFORMATION ON DISCOVER CARD SECURITIZATION
### They are not the real  Party of Interest
### EXIBIT C

## COUNT I
**VIOLATION OF FAIR CREDIT REPORTIN ACT  15 U.S.C. § 1681b (f) FCRA And VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA), 15 U.S.C. §1692**

**BY DEFENDANTS:**

Winn Law Group, APC Brian N. Winn , Individually; Naomi S. Rust Individually; Laura M Hoalst Individually,John E. Gordon Individually, Dana L. Ozols, Individually, Stephen S Zeller Individually: and Discover Card for violations of the Fair Debt Collection Practices Act

41. Plaintiff, DAVID MYERS alleges and incorporates the information in paragraphs 1 through

42. Plaintiff, DAVID MYERS is a consumer within the meaning of the FDCPA, 15 U.S.C.
§1692a(3)

43. DISCOVER CARD/BANK is a debt collector within the meaning of the FDCPA, 15 U.S.C.
§1692a (6).

44. WINN LAW GROUP,APC: is a debt collector within the meaning of the FDCPA, 15 U.S.C.
§1692a (6).

45. BRIAN N. WINN,Bar # 86779 Individually; is a debt collector within the meaning of the
FDCPA, 15 U.S.C. §1692a (6).

46. LAURA M HOALST. Bar #101082; Individually is a debt collector within the meaning of
the FDCPA, 15 U.S.C. §1692a (6).

47. JOHN E GORDON, Bar # 180053 Individually; is a debt collectors within the meaning of
the FDCPA, 15 U.S.C. §1692a (6).

48. DANA L OZOLS Bar# 250416 Individually: is a debt collector within the meaning of the
FDCPA, 15 U.S.C. §1692a (6).

49.STEPHEN S. ZELLER Bar # 265664 Individually. is a debt collector within the meaning of
the FDCPA, 15 U.S.C. §1692a (6).

50. Each Defendant willfully violated the FDCPA 15 U.S.C. §1692 against the Plaintiff. Each of
the Defendant's violations includes, but are not limited to, the following:

(a) Each Defendant willfully violated 15 U.S.C §1692 c (a) (1) "At any unusual time, unusual
place (By serving a Notice of Pretrial Hearing in Hardee County Civil Court), or unusual time or
place known to be inconvenient to the consumer." Plaintiff is entitled to $1,000 per Defendant
and Plaintiff demands $8,000.

(b) Each Defendant willfully violated 15 U.S.C. §1692e (2) by falsely representing the character,
amount, or legal status of any debt. Plaintiff is entitled to $1,000 per Defendant and Plaintiff
demands $8,000.

(c) Each Defendant willfully violated 15 U.S.C. §1692 e (8) Communicating or threatening to
communicate to any person credit information which is known or which should be known to be
false, including the failure to communicate that a disputed debt is disputed. Plaintiff is entitled to
$1,000 per Defendant and Plaintiff demands $8,000.

- 6

(d) Each Defendant willfully violated 15 U.S.C. §1692 e (9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval. Plaintiff is entitled to $1,000 per Defendant and Plaintiff demands $8,000.

(e) Each Defendant willfully violated 15 U.S.C. §1692 e (10) the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. Plaintiff is entitled to $1,000 per Defendant and Plaintiff demands $8,000.

(f) Each Defendant willfully violated 15 U.S.C. §1692 e (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action. Plaintiff is entitled to $1,000 per Defendant and Plaintiff demands $8,000.

(g) Each Defendant willfully violated 15 U.S.C. §1692 e (12) the false representation or implication that accounts have been turned over to innocent purchasers for value. Plaintiff is entitled to $1,000 per Defendant and Plaintiff demands $8,000.

(h) Each Defendant willfully violated 15 U.S.C. §1692 e (13) the false representation or implication that documents are legal process. Plaintiff is entitled to $1,000 per Defendant and Plaintiff demands $8,000.

(i) Each Defendant willfully violated 15 U.S.C. §1692 f (1) by the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. Plaintiff is entitled to $1,000 per Defendant and Plaintiff demands $8,000.

(j) Each Defendant willfully violated 15 U.S.C. § 1692 g(b) Validation of Debts and continued collection activity after receiving notice of dispute, and failed to provide written validation of debt before resuming collection activities, in violation of 15 U.S.C.§1692g(b). Plaintiff is entitled to $1,000 per Defendant and Plaintiff demands $8,000.

**WHEREFORE, Plaintiff, DAVID MYERS demands judgment for damages against Each Defendant:** Winn Law Group, APC Brian N. Winn , Individually; Naomi S. Rust Individually; Laura M Hoalst Individually,John E. Gordon Individually, Dana L. Ozols, Individually, Stephen S Zeller Individually: and Discover Card.
**, and for actual damages of $16,258.43 and statutory damages, and punitive damages.**

## COUNT II
## VIOLATION OF FAIR CREDIT REPORTIN ACT 15 U.S.C. § 1681b (f) FCRA

51. Plaintiff realleges and incorporates paragraphs 16 through 20

52. Plaintiff is a "consumer" within the meaning of the FCRA.

53. Defendant pulled a "credit report" within the meaning of the (FCRA)above as if set out fully herein. FCRA from a "consumer reporting agency" within the meaning of the FCRA.

54. Defendant violated the FCRA by pulling two credit reports under false pretenses or Knowingly without permissible purpose.

**WHEREFORE, Plaintiff, DAVID MYERS demands judgment for damages against Each Defendant**: Winn Law Group, APC Brian N. Winn , Individually; Naomi S. Rust Individually; Laura M Hoalst Individually, John E. Gordon Individually, Dana L. Ozols, Individually, Stephen S Zeller Individually: and Discover Card.
**, and for actual damages of $16,258.43 and statutory damages, and punitive damages.**

## DEMAND FOR JURY TRIAL
Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.
Respectfully submitted this 12th Day of January, 2012

DAVID MYERS

1/12/12

- 8

CERTIFICATE OF SERVICE
I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail this 12th day of January, 2012 to:
1. LAW OFFICES OF WINN LAW GROUP, APC.;
110 E. Wilshire Ave Suit 212
Fullerton, California 92832

2.Brian N. Winn, Individually;
110 E. Wilshire Ave Suit 212
Fullerton, California 92832

3.Laura M Hoalst, Individually
110 E. Wilshire Ave Suit 212
Fullerton, California 92832

4. John E. Gordon, Individually;
110 E. Wilshire Ave Suit 212
Fullerton, California 92832

5. Dana L. Ozols Individually
110 E. Wilshire Ave Suit 212
Fullerton, California 92832

6. Stephen S Zeller, Individually;
110 E. Wilshire Ave Suit 212
Fullerton, California 92832

7. Naomi S. Rust, Individually:
110 E. Wilshire Ave Suit 212
Fullerton, California 92832

8. Discover Bank NA ;
502 E Market St
Greenwood DE 19950

DAVID MYERS
This 12th Day of January, 2012.

- 9

# EXHIBIT

# A

**Attempt to Validate Debt.**

Under the Federal Debt Collection Practices Act, you are allowed to challenge the validity of a debt that a collection agency states you owe to them. Use this letter and the following form to make the agency verify that the debt is actually yours and owed by you. Keep a copy for your files and send the letter registered mail.

David Myers
4907 Rimwood Dr
Fair Oaks, CA 95628

Winn Law Group
110 E. Wilshire Ave Suite 213
Fullerton, CA 92832-1109

Date: June 23, 2010

Re: Acct # XXXX-XXXX-XXXX-1749

To Whom It May Concern:

This letter is being sent to you in response to a notice sent to me on ~~September 30, 2002~~ *June 4th Money M 2010*. Be advised that this is not a refusal to pay, but a notice sent pursuant to the Fair Debt Collection Practices Act, 15 USC 1692g Sec. 809 (b) that your claim is disputed and validation is requested. Reg: 70091680000122160573

This is NOT a request for "**verification**" or proof of my mailing address, but a request for **VALIDATION** made pursuant to the above named Title and Section. I respectfully request that your offices provide me with competent evidence that I have any legal obligation to pay you.

Please provide me with the following:

- What the money you say I owe is for;
- Explain and show me how you calculated what you say I owe;
- Provide me with copies of any papers that show I agreed to pay what you say I owe;
- Provide a verification or copy of any judgment if applicable;
- Identify the original creditor;
- Prove the name address and phone number of the CEO of Discover Bank
- Show me your purchase price after this bill was **Charged Off**
- Provide with your affidavit of assignment.
- Provide me with the name address and phone  number of the Custodian of the Record for Discover Bank.

At this time I will also inform you that if your offices have reported invalidated information to any of the 3 major Credit Bureau's (Equifax, Experian or TransUnion) this action might constitute fraud under both Federal and State Laws. Due to this fact, if any negative mark is found on any of my credit reports by your company or the company that you represent I will not hesitate in bringing legal action against you for the following:

- Violation of the Fair Credit Reporting Act
- Violation of the Fair Debt Collection Practices Act
- Defamation of Character

If your offices are able to provide the proper documentation as requested in the following Declaration, I will require at least 30 days to investigate this information and during such time all collection activity must cease and desist.

Also during this validation period, if any action is taken which could be considered detrimental to any of my credit reports, I will consult with my legal counsel for suit. This includes any listing any information to a credit reporting repository that could be inaccurate or invalidated or verifying an account as accurate when in fact there is no provided proof that it is.

If your offices fail to respond to this validation request within 30 days from the date of your receipt, all references to this account must be deleted and completely removed from my credit file and a copy of such deletion request shall be sent to me immediately.

I would also like to request, in writing, that no telephone contact be made by your offices to my home or to my place of employment. If your offices attempt telephone communication with me, including but not limited to computer generated calls and calls or correspondence sent to or with any third parties, it will be considered harassment and I will have no choice but to file suit. All future communications with me MUST be done in writing and sent to the address noted in this letter by USPS.

It would be advisable that you assure that your records are in order before I am forced to take legal action. This is an attempt to correct your records, any information obtained shall be used for that purpose.

Best Regards,

David Myers

# EXHIBIT

# B



**U.S. Postal Service**
**CERTIFIED MAIL  RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

| | | |
|---|---|---|
| Postage | $ | $0.61 | 0628 |
| Certified Fee | | $2.80 | 06 |
| Return Receipt Fee (Endorsement Required) | | $0.00 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $3.41 | 05/25/2010 |

Sent To WIYN LAW

Street, Apt. No.;
or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006          See Reverse for Instructions

**DEBT COLLECTOR DISCLOSURE STATEMENT**                    **Date 5/25/10**
Page 1 of 7
FILE 44352010  Registered Mail # 7009168000122160542 US
**DEBT COLLECTOR DISCLOSURE STATEMENT**
**Re: "Offer of Performance"**
This statement and the answers contained herein may be used by Respondent, if necessary, in
any court of competent jurisdiction.
**NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL**
**NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT**
**(Applicable to all Successors and Assigns)**
**Respondent:      David Myers**
**Re Account No:   xxxxxxx1749**
**Alleged Amount: ?????????????**
**Alleged Creditor:  Winn Law Group / Discover Card Bank**
**Notice:** This "Debt Collector Disclosure Statement" is not a substitute for, nor the equivalent of,
the herein above requested verification of record, i.e., "Confirmation of correctness, truth, or
authenticity, by affidavit, oath, or deposition" (Black's Law Dictionary 6th Edition), re the alleged
debt, and must be completed in accord with the "Fair Credit Reporting
Act," at [15 USC § 1681 et seq.], and the "Fair Debt Collection Practices Act," at [15 USC § 1692
et seq.], and the applicable portions of "Truth in Lending" (Regulation — Z), at 12 CFR part 226 et
seq., and demands as cited above "Offer
of Performance." Debt Collector must make all required disclosure clearly, accurately,
conspicuously in writing re the
following:

1. Name of Debt Collector:             **Winn Law Group**

2. Address of Debt Collector:          **110 E. Wilshire Ave Suite 212**
                                        **Fullerton, CA 92832-1109**

3. Name of alleged Debtor:             **David Myers**

4. Address of alleged Debtor:          **4907 Rimwood Dr**
                                        **Fair Oaks, CA 95628**

5. Alleged Account Number:             **xxxxxxxxxxxx1749**

6. Alleged debt owed: $ ?????????????????????? _____

7. Date alleged debt became payable: ??????????????????????_____

8. Re this alleged account, what is the name and address of alleged "Original Creditor," if different
from Debt Collector:
8. a. Was this debt  Charged Off
YES / NO
9. Re this alleged account, if Debt Collector is different from alleged "Original Creditor," does Debt
Collector have bona fide affidavit of assignment for entering into alleged original contract between
Original Creditor and alleged Debtor:
YES / NO
10. Did Debt Collector purchase this alleged account from the alleged Original Creditor?
YES / NO
11. If applicable, date of purchase of this alleged account from Original Creditor, and purchase
amount:
**Date:** _____; **Amount: $**_____

## DEBT COLLECTOR DISCLOSURE STATEMENT

**Page 2 of 7**

12. Did Debt Collector purchase this alleged account from a previous debt Collector:
**YES / NO N/A**

13. Date of purchase of this alleged account from previous Debt Collector, and purchase amount:
**Date:** _____ **Amount $** _____

14. Regarding this alleged account, Debt Collector is currently the: **(a) Owner; (b) Assignee; (c) Other —**
explain:_____

_____   _____

_____   _____

_____   _____

15. What are the terms of the transfer of rights re this alleged account?

_____   _____

_____   _____

_____

16. If applicable, transfer of rights re this alleged account was executed by the following method:
**(a) Assignment; (b) Negotiation; (c) Novation; Other —**
explain:_____

_____   _____

_____   _____

_____

17. If the transfer of rights re this alleged account was by assignment, was there an equal exchange of consideration?
**YES / NO N/A**

18. What was the nature and cause of the equal exchange of consideration cited in #17 above, if your answer was YES
explain?_____

_____   _____

_____   _____

_____

19. If the transfer of rights re this alleged account was by negotiation, was the account taken for value?
**YES / NO N/A**

20. What is the nature and cause of any value cited in #19 above, if your answer was YES?

_____   _____

_____   _____

_____

**DEBT COLLECTOR DISCLOSURE STATEMENT**

**Page 3 of 7**

21. If the transfer of rights re this alleged account was by novation, was consent given by alleged Debtor?
**YES / NO N/A**

22. What is the nature and cause of any consent cited in #21 above, if your answer was YES?

_____

_____                                           ;

23. Has Debt Collector provided alleged Debtor with the requisite verification of the alleged debt as required by the "**Fair Debt Collection Practices Act**"?
**YES / NO**

24. Date of said verification cited in #23 above, which provided alleged Debtor;
Date: _____                                    ;

25. Was said verification cited in #23 above, in the form of a sworn or affirmed oath, affidavit, or deposition?
**YES / NO**

26. Verification cited in #23 above, if your answer is YES, was provided alleged Debtor in the form of:
**OATH, AFFIDAVIT, DEPOSITION**

27. Does the Debt Collector have any knowledge of any claim(s)/defense(s) re this alleged account?
**YES / NO**

28. What is the nature and cause of any claim(s)/defense(s) re this alleged account?

_____

_____          .

29. Was the alleged Debtor sold any products/services by Debt Collector?
**YES / NO**

30. What is the nature and cause of any products/services cited in #29 above if your answer was YES?

_____

_____

31. Does there exist a verifiable, bona fide, original commercial instrument between Debt Collector and alleged Debtor
containing alleged Debtor's verified, bona fide signature?
**YES / NO**

**DEBT COLLECTOR DISCLOSURE STATEMENT**
**Page 4 of 7**

32. What is the nature and of any verifiable commercial instrument cited in #31 above, if your answer was YES?

_____

_____

_____

33. Does there exist verifiable conclusive evidence of an exchange of a benefit or detriment between Debt Collector and
alleged Debtor?
**YES / NO**

34. What is the nature and cause of this verifiable conclusive evidence of an exchange of a benefit or detriment as cited in
#33 above, if your answer was YES?

_____

_____

_____

35. Does any absolute evidence exist of verifiable external act(s) giving the objective semblance of agreement between Debt Collector and alleged Debtor?
**YES / NO**

36. What is the nature and cause of any external act(s) giving the objective semblance of agreement as cited above in #35,
if your answer was YES?

_____

_____

_____

_____

_____

37. Have any charge-offs been made by any creditor or debt collector regarding this alleged account?
**YES / NO**

38. Have any insurance claims been made by any creditor or debt collector regarding this alleged account?
**YES / NO**

39. Have any tax write-offs been made by any creditor or debt collector?
**YES / NO**

40. Have any tax deductions been made by any creditor or debt collector regarding this alleged account?
**YES / NO**

41. Have any judgments been obtained by any creditor or debt collector regarding this alleged account?
**YES / NO**

**DEBT COLLECTOR DISCLOSURE STATEMENT**
**Page 5 of 7**

42. Does the Debt Collector and/or the Creditor purport to have and to hold a "Verifiable Contract" where an equal
exchange of consideration exists, between the Debtor, with the Debt Collector and/or the Creditor?
**YES / NO**

43. What is the nature and cause of this Verifiable Contract, cited in #42 above, if answered YES?

_____

_____

_____

_____

44. Does the Debt Collector and/or Creditor purport to have and to hold a Verifiable Contract which purports to have a
bona fide signature of Debtor?
**YES / NO**

45. Does the Debt Collector and/or Creditor purport to have and to hold a Verified Contract, which purports to have a bona fide signature of alleged Debtor, which the Debt Collector and/or Creditor has first hand personal knowledge of, and will verify under oath, affirmation, deposition, under penalty of perjury?
**YES / NO**

46. If Debtor and/or Creditor purport to have and to hold a Verifiable Contract, which purports to have a bona fide signature of Debtor, please produce a true, correct, and complete copy of said contract, and verify under oath, affirmation, deposition, under penalty of perjury that Debt Collector and/or Creditor has first hand, personal knowledge that Debtor's signature appears thereon, or state the nature and cause why the Debt Collector and/or Creditor, cannot, will not produce said contract, which purports to have a bona fide signature, and will not, cannot verify under oath, affirmation, or deposition to having first hand, personal knowledge, as cited in #45 above, if answered YES?

_____

_____

_____

_____

47. Does the Debt Collector and/or Creditor, have any type or kind of verifiable claim, which complies with all of the provisions set forth in the "Fair Credit Reporting Act," codified at [15 USC §§1681 et seq.] ?
**YES / NO**

**DEBT COLLECTOR DISCLOSURE STATEMENT**
**Page 6 of 7**

48. What is the nature and cause which Debt Collector and/or Creditor rely upon for such claim, and what procedures were implemented in accord with the "Fair Credit Reporting Act" to investigate such claim, cited in #47 above, if answered
YES?_____

_____
_____
_____

49. Does the Debt Collector and/or Creditor, have verifiable facts which they rely upon in order to provide the (Credit Reporting Agency) CRA, with information on alleged Debtor, which complies with the provisions set forth in [15 USC § 1681s-2], and which is verifiable in accordance with [15 USC § 1692g] ?
**YES / NO**

50. What is the nature and cause which Debt Collector and/or Creditor rely upon for such verifiable facts, and what procedures were implemented in accord with the above said provisions cited in #49 above, if answered
YES?_____

_____
_____
_____

51. Did the Debt Collector and/or Creditor, advise the alleged Debtor of the numerous rights which he maintains as accorded in the "Fair Debt Collections Practices Act" codified at [15 USC §§ 1692 et seq.]?
**YES / NO**

52. What is the nature and cause which the Debt Collector and/or Creditor relies upon which is verifiable, and clearly and accurately identifies how, and when the Debt Collector and/or Creditor, informed Debtor of such right accorded and cited in #51 above, if answered YES?

_____
_____
_____

53. Does the Debt Collector and/or Creditor have any verifiable, articulable facts which they rely upon to furnish the (Credit Reporting Agency) CRA, with unverified, inaccurate, erroneous information in violation of the provisions set forth in the "Fair Credit Reporting Act" [15 USC if 1681d, 1681i, 1681n, 1681o, 1681q, 1681s, 1681s-2]; and, The Unfair or Deceptive Act or Practices in Commerce in violation of 45(a) of the "Federal Trade Commission Act" codified [15 USCG 45(a)(b)]; and, "The Fair Debt Collection Practices Act" codified [15 USC if 1691(b)(c)(d)(e)(f)(g)(i)(j)(k)] ?
**YES / NO**

**DEBT COLLECTOR DISCLOSURE STATEMENT**
**Page 6 of 7**

48. What is the nature and cause which Debt Collector and/or Creditor rely upon for such claim, and what procedures were implemented in accord with the "Fair Credit Reporting Act" to investigate such claim, cited in #47 above, if answered
YES?_____

_____

_____

_____

49. Does the Debt Collector and/or Creditor, have verifiable facts which they rely upon in order to provide the (Credit Reporting Agency) CRA, with information on alleged Debtor, which complies with the provisions set forth in [15 USC § 1681s-2], and which is verifiable in accordance with [15 USC § 1692g] ?
YES / NO

50. What is the nature and cause which Debt Collector and/or Creditor rely upon for such verifiable facts, and what procedures were implemented in accord with the above said provisions cited in #49 above, if answered
YES?_____

_____

_____

51. Did the Debt Collector and/or Creditor, advise the alleged Debtor of the numerous rights which he maintains as accorded in the "Fair Debt Collections Practices Act" codified at [15 USC §§ 1692 et seq.]?
YES / NO

52. What is the nature and cause which the Debt Collector and/or Creditor relies upon which is verifiable, and clearly and accurately identifies how, and when the Debt Collector and/or Creditor, informed Debtor of such right accorded and cited in #51 above, if answered YES?

_____

_____

53. Does the Debt Collector and/or Creditor have any verifiable, articulable facts which they rely upon to furnish the (Credit Reporting Agency) CRA, with unverified, inaccurate, erroneous information in violation of the provisions set forth in the "Fair Credit Reporting Act" [15 USC if 1681d, 1681i, 1681n, 1681o, 1681q, 1681s, 1681s-2]; and, The Unfair or Deceptive Act or Practices in Commerce in violation of 45(a) of the "Federal Trade Commission Act" codified [15 USCG 45(a)(b)]; and, "The Fair Debt Collection Practices Act" codified [15 USC if 1691(b)(c)(d)(e)(f)(g)(i)(j)(k)] ?
YES / NO

**DEBT COLLECTOR DISCLOSURE STATEMENT**
**Page 7 of 7**

54. What is the nature and cause of these verifiable, articulable facts which Debt Collector and/or Creditor relies upon for providing unverified, inaccurate, erroneous information in violation of the provisions set forth and cited in #53 above, if answered YES, if answered NO, provide proof positive of verifiable facts relied upon under oath, affirmation, deposition and under penalty of perjury, that verifiable proof of claim exists;

Debt Collector's and/or Creditor's, failure/refusal, both intentional and otherwise, in completely, unambiguously answering points "1" through "54" above and returning this Debt Disclosure Statement, as well as providing Respondent with requisite verification validating he herein above reference alleged debt, constitutes the Debt Collector's and alleged Creditor's tacit acquiescence that Debt Collector and/or Creditor have no verifiable, lawful, bona fide claims against Respondent in above referred alleged account or any and all other alleged accounts not specifically enumerated herein. Debt Collector and/or Creditor by it's/their failure/refusal to respond, and/or it's/their failure to provide each and every verified requisite proof as requested herein within the thirty(30) day time period allowed, will constitute the Debt Collector(s) and/or Creditor(s) waiver of any and all alleged claims against Respondent and indemnifies and holds harmless Respondent against any and all costs and fees heretofore and hereafter incurred, including but not limited to any and all related collection attempts involving the herein above referenced alleged account and any and all related accounts.

**Declaration:** The undersigned hereby declares under penalty of perjury of the laws of the State of California and the United States of America, that the statements made in this "Debt Collector Disclosure Statement" are true, correct, complete and not misleading, in accordance with the Undersigned's first-hand, personal knowledge and belief.

_____

Date

_____

Printed Name of Signatory

_____

Official Title of Signatory

_____

Authorized Signature for Debt Collector, and/or Creditor, Undersigned.

Debt Collector must timely complete and return this "Debt Collection Disclosure Statement." Debt Collector's alleged claim will not be considered if any portion of this "Debt Collector Disclosure Statement" is not completed and timely returned with all required documents, which specifically includes the requisite verification, made in accordance with the law and codified in the "Fair Credit Reporting Act" at [15 USC § 1681 et seq.] and the "Fair Debt Collection Practices Act" at [15 USC § 1692 et seq.], and which states in part: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," and "the threat to take any action that cannot be legally taken," all of which are violations of law. If the Debt Collector and/or alleged Creditor, do no respond as required by law, Debt Collector's and/or Creditor's alleged claim will not be considered and Debt Collector and/or alleged Creditor may be liable for any and all damages for any continued collection efforts, as well as any damnification sustained by Respondent. Please allow thirty (30) days for processing excluding the day of receipt after Respondent's and CRA(s) receipt of Debt Collector's and/or alleged Creditor's response.

# EXHIBIT

# C



**DISCOVER**
FINANCIAL SERVICES

*Via Electronic Mail: Comments@FDIC.gov*

July 1, 2010

Robert Feldman, Executive Secretary
Federal Deposit Insurance Corporation
550 17th Street, NW
Washington, D.C. 20429
Attention: Comments

Re:   Treatment by the Federal Deposit Insurance Corporation as Conservator or Receiver of
        Financial Assets Transferred by an Insured Depository Institution in Connection With a
        Securitization or Participation After September 30, 2010
        (RIN3064-AD53)

Ladies and Gentlemen:

Discover Financial Services ("Discover") appreciates the opportunity to submit this letter in
response to the request for comment by the Federal Deposit Insurance Corporation (the "FDIC")
regarding its Notice of Proposed Rulemaking entitled "Treatment by the Federal Deposit
Insurance Corporation as Conservator or Receiver of Financial Assets Transferred by an Insured
Depository Institution in Connection With a Securitization or Participation After September 30,
2010" (the "NPR").[1]  Discover commends the FDIC for its ongoing support of the securitization
market and acknowledgment of the vital role that securitizations play in supporting the strength
of depository institutions and allowing depository institutions to provide cost-effective credit to
consumers.  As recognized in the NPR, the legal isolation safe harbor is a critical component of a
functioning securitization market, and Discover supports the FDIC's efforts to develop an
effective safe harbor in response to recent accounting changes that have impacted issuers' ability
to satisfy the requirements of the FDIC's existing rule.

Discover has been active in the credit card securitization market since 1989, securitizing
approximately $95 billion in credit card receivables through more than 100 transactions.  Credit
card securitization has been an important, efficient and cost-effective means for Discover to fund
its lending activities, allowing Discover to provide credit to its cardholders at a lower cost than
would otherwise have been possible.  Securitization also provides Discover with an economical
source of contingent funding.  Discover issues asset-backed securities both publicly and through

---

[1] Reference is made in this letter to the FDIC's Advance Notice of Proposed Rulemaking (RIN 3064-AD55) on this
subject (the "ANPR").  Discover submitted a response letter to the ANPR on February 22, 2010.

privately placed asset-backed conduit facilities, which may be fully or partially drawn at closing. As of June 30, 2010, Discover had $15.1 billion in securitization funding outstanding as well as $3.5 billion of undrawn capacity under committed conduit facilities. For the past 20 years, Discover's securitization trusts have paid all maturing securities in full and on time and have never had an early amortization event, event of default or other adverse event that would cause early or late repayment. We understand that our ability to continue to fund our receivables through securitization depends on the performance of our assets over time and our ability to repay our investors as they expect. We have been diligent in providing transparency to investors regarding the structure of our securitization trusts and the performance of the underlying assets.

The FDIC has been a long-time supporter of and advocate for securitization, and we believe that the reasons for that support—particularly in the context of credit card securitizations—are still fundamentally sound. The current FDIC Rule adopted in 2000 (12 CFR 360.6 (the "Existing Securitization Rule")) has been a critical component in maintaining the efficient functioning of the securitization market over the past decade. The Existing Securitization Rule established a clear and reliable path to qualifying a transaction under the legal isolation safe harbor, which has provided certainty to issuers and investors as well as the rating agencies. This certainty around legal isolation and regulatory protection allows issuers to attain the highest rating for these securities from the rating agencies by "de-linking" the asset-backed securities from the credit rating of the issuer itself. Achieving a triple-A rating for the senior-most securities in a securitization structure is fundamental to the positive economics of the securitization market that allow issuers to rely on capital markets liquidity, in addition to deposits and other funding channels, to provide cost-effective credit to consumers. Consequently, in order to achieve its stated goal of promoting a robust securitization market going forward, it is incumbent upon the FDIC to structure a new safe harbor with clear and achievable conditions that provides certainty for both issuers and investors and allows issuers to achieve a AAA rating. In our view, such a safe harbor is fully consistent with the overarching responsibility of the FDIC to protect the deposit insurance fund and promote the soundness of the financial system as a whole.

Discover is a member of the American Securitization Forum (the "ASF") and has participated directly in the preparation of the ASF's comment letter on the NPR. While the ASF represents a broad constituency representing the various asset classes that utilize securitizations, many of the comments contained in the ASF response letter touch directly on areas of concern to Discover, and we support the comments and suggestions in the ASF comment letter. In particular, we have referenced below certain issues for which we believe the ASF's reply letter provides valuable discussion. We are also a member of the Financial Services Roundtable (the "FSR") and support the positions set forth in the FSR's comment letter on the NPR.

The following sections present a summary of the issues that Discover believes are most critical with respect to the NPR.

1.    <u>Imperative to Ensure New Safe Harbor Rule is Effective</u>

The Existing Securitization Rule has been critical to supporting a robust securitization market primarily because it provides bright-line requirements, which, if met, provide certainty to investors and the rating agencies that the FDIC will not seek to repudiate the trust or reclaim the

underlying assets. This certainty allows the ratings of securitization transactions to be "de-linked" from the rating of the sponsoring institution, thereby allowing securitizations to achieve the highest possible rating, which is critical to the functioning, liquidity and economics of the securitization market. Consequently, the new safe harbor rule must provide the same degree of certainty provided by the Existing Securitization Rule in order to ensure a functioning securitization market going forward. The FDIC has acknowledged the importance of a functioning securitization market and has indicated that it is attempting to achieve such a market with the Proposed Rule. However, there are several aspects to the Proposed Rule that raise uncertainty as to whether de-linking of the securitization can be achieved under the Proposed Rule.

### a.    Consent to Exercise of Remedies Is Not Sufficient Protection Against Repudiation or Reclamation of Assets for Qualifying Securitizations

Unlike the Existing Securitization Rule, which provided a direct safe harbor from a repudiation and/or reclamation of assets by the FDIC, the Proposed Rule merely provides remedies in the event a repudiation or default occurs. This distinction is critical because it raises uncertainty for investors and the rating agencies as to whether the remedies provided in paragraph (d)(4) of the Proposed Rule are adequate to ensure that investors will be made whole in the event of a repudiation or default. In particular, there is uncertainty as to the amount of damages that would be paid to investors and the timing of such payments if the FDIC repudiated a securitization agreement, which could prevent the de-linking of the securitization's rating from the rating of the sponsor. As an example, Standard & Poor's Ratings Services ("S&P") recently indicated that the uncertainty around the damages provisions in the Proposed Rule could make it impossible for S&P to de-link the securitization from the rating of the sponsor.[2] Importantly, this is a concern not just for new issuances, but also for our existing issuances. Because the provisions of the safe harbor under the Existing Securitization Rule are better for investors than the provisions of the Proposed Rule, we may not be able to issue new securities from our existing structures if doing so would subject our current investors to the more limited remedies of the Proposed Rule.

We note that Section III of the ASF's response letter to the NPR provides further discussion of the impact that uncertainty around remedies would have on the potential effectiveness of the safe harbor as set forth in the Proposed Rule, and we share the ASF's concerns on this issue. In particular, we agree with the ASF's proposed solution to the uncertainty raised by the remedies approach taken in paragraph (d)(4) of the Proposed Rule. Paragraph (d)(4) should be revised to track the safe harbor language currently set forth in paragraph (d)(3) but replace the proviso that the transfer satisfies the conditions of sale accounting treatment with a proviso that "the financial assets are subject to a legally enforceable and perfected security interest under applicable law." The bright-line approach would provide certainty to investors and the rating agencies that the trust and its assets qualify for the safe harbor so long as the security interest requirement and other conditions set forth in the Proposed Rule are satisfied.

---

[2] See http://www.standardandpoors.com/ratings/articles/en/us/?assetID=1245214429388

### b.   Conditions for Qualification Must Be Clear and Achievable at Closing

We continue to be concerned that certain of the conditions to qualify for the safe harbor are either vague or ongoing, and will prevent the achievement of the critical certainty necessary for an effective safe harbor. Again, the Existing Securitization Rule has been effective because it provides a bright-line test for a transaction to qualify for the safe harbor at closing, which provides the required certainty to investors and allows the ratings of securitizations to be de-linked from the ratings of the sponsor. For instance, we provide monthly disclosures of trust performance to all our investors, and have since 1989, but we do not think the safe harbor should be at risk if we fail to do so. Similarly, we provide what we believe to be clear disclosure about our structure and our assets, but we do not believe our investors should lose the protection of the safe harbor if our disclosure is later challenged as being insufficiently clear. By imposing conditions to qualify for the safe harbor that are vague and/or ongoing, the Proposed Rule does not provide enough certainty to ensure that the safe harbor will be effective in giving comfort to investors that there is no risk of repudiation/ reclamation that could force them to bear the risk of losing the safe harbor. Highlighting this concern, Moody's Investors Service, Inc. recently published a report stating that several unclear and subjective preconditions contained in the Proposed Rule "may make the safe harbor elusive." Moody's specifically raised the concern that investors, not sponsors, bear the risk of loss of the safe harbor with respect to conditions that must be satisfied over the life of the transaction.[3] Additionally, we support the comments within Section IV of the ASF's response letter to the NPR, which further discusses the concern that certain conditions to qualification contained in the Proposed Rule could prevent an effective safe harbor.

### 2.   Extension of the Transition Period under Final Rule

Discover commends the FDIC for adopting the Final Rule (the "Transition Period Final Rule") that extended the Existing Securitization Rule's legal isolation safe harbor through September 30, 2010 (the "Transition Period"). However, given the number of significant questions still surrounding the form the new safe harbor rule will take as well as the fundamental structural, documentation, disclosure and other changes that will be required in connection with the new rule, Discover requests that the FDIC extend the Transition Period to 9-12 months after the date on which the final rule is published in the *Federal Register*. The Transition Period may be extended further in order to allow for a coordinated response to both the new safe harbor rule and the other legislative and regulatory reforms that are being proposed with respect to securitizations as discussed in the next section.

For example, the structural, disclosure and other requirements imposed under the Proposed Rule may require issuers to submit new or amended shelf registrations for review and approval by the Securities and Exchange Commission ("SEC"). In addition, the SEC's proposal for changes to the regulations governing asset-backed securities ("New Regulation AB") would fundamentally alter the shelf registration documentation and procedures for securitization facilities, and has not yet been adopted. Until we know the exact parameters of the new requirements that will affect our program, we cannot restructure our program to meet them. As a point of reference, it took us over a year to modify our disclosure and computer systems to accommodate the adoption of the

---

[3] See http://image.exct.net/lib/fefb127575640d/m/1/05.25.10+Credit+Card_Statement.pdf

current Regulation AB in 2005. Consequently, we expect to need a significant amount of time to prepare and submit new shelf registration documentation that responds to both the Proposed Rule and New Regulation AB, which as stated would be subject to the SEC's review process.

### 3.   Ensure Coordinated Approach with other Reform Proposals

In addition to the fundamental changes arising under the Proposed Rule, sponsors in the securitization markets are also trying to prepare for the requirements expected to be included in the financial regulatory reform legislation expected to be passed shortly by the United States Congress as well as the New Regulation AB proposal. Due to the high degree of overlap between the Proposed Rule and the Congressional legislation and revisions proposed under New Regulation AB, we believe the FDIC should not use the Proposed Rule to impose a set of securitization regulations prior to the passage of the Congressional legislation, effectiveness of New Regulation AB and completion of joint rulemaking required under the new legislation. Discover supports the ASF's position on risks associated with having inconsistencies between the Proposed Rule and the Congressional legislation and/or effectiveness of New Regulation AB and the need for coordination with other reform proposals as set forth in Section II of the ASF response letter.

### 4.   Clarify That Sales to Affiliates Are Permissible Up to a Threshold Amount

Paragraph (c)(1) of the Proposed Rule provides that "the obligations shall not be sold to an affiliate or insider."[4] As drafted, this provision would prevent a trust for which an affiliate holds any interest from obtaining the safe harbor protection under the Proposed Rule, which we do not believe is the FDIC's intent. As discussed in the next paragraph, Discover and many other securitization issuers utilize a structure in which affiliates retain some or all of the credit-enhancing subordinated tranches. We therefore suggest that this portion of paragraph (c)(1) be rewritten to say "no more than 50% of the obligations shall be sold to an affiliate or insider of the sponsor." For the avoidance of doubt, the FDIC should clarify that this maximum percentage does not include any "seller's interest" retained in the trust by the sponsor. Alternatively, the FDIC could re-insert the word "predominately" in paragraph (c)(1) if it deems the bright-line approach inadvisable.

In order to obtain a AAA rating on its most senior securitization issuances, many issuers, including Discover, have periodically issued certain subordinated series or tranches to an affiliate. While the most senior tranche is held exclusively by third parties and represents a clear majority of the outstanding investor interest in Discover's securitization trust, the percentage of outstanding securities owned by affiliates of our sponsor, Discover Bank, has increased in the past 12-18 months due to the ongoing disruption to, or absence of, a public market for these subordinated securities. In addition, we typically hold a significant seller's interest in our

---

[4] Section (c)(1) of the sample regulatory text that was set forth in the ANPR provided that "the transaction shall not be sold predominately to an affiliate or insider." In our comment letter to the ANPR, Discover requested that the FDIC clarify the meaning of "predominately" in this instance in order to confirm that a structure in which an affiliate purchases credit-enhancing subordinate series in a trust would not be excluded from the benefit of the safe harbor. However, the change the FDIC made in Section (c)(1) in the NPR was simply to strike the word "predominately."

securitization trust to facilitate our ability to enter the market quickly and to cover possible fluctuations in outstanding balances. The size of this seller's interest also increases when outstanding securities mature. We do not believe the existence of the seller's interest, which is a core feature of credit card master trusts, should affect the availability of the safe harbor. We note, further, that in each case these retained interests represent significant "skin in the game" that we maintain with respect to our structures, which align our credit risk management efforts with the interests of investors. This retention of risk is consistent with the Proposed Rule, New Regulation AB and the proposed legislation on regulatory reform, all of which emphasize retention of risk as a fundamental aspect of securitizations.

5.   **Confirm that Undrawn Commitments are Grandfathered under Transitional Final Rule[5]**

Through our securitization trust, Discover often enters into a transaction with an asset-backed commercial paper conduit in which the commitment amount may be fully or partially undrawn at closing. This structure allows Discover to issue additional beneficial interests to the conduit during the term of the commitment, up to a specified maximum amount. Discover and a number of our peers utilize this structure to provide cost-effective contingent liquidity. This structure allows us to utilize this liquidity on as little as one to three days' notice to the conduit sponsor (agent). These undrawn conduit commitments do not represent an unfunded securitization structure, but rather a fully or partially unfunded tranche of a larger issuance trust, with many issuances to third parties outstanding. This securitization structure is viewed favorably by federal banking agencies as a source of liquidity.

As an example, Discover might set up a conduit facility that would allow us to borrow up to $500 million from the conduit at any point during the commitment period. If we decided to draw on the facility, we would send the conduit agent an increase notice that we were drawing, the conduit would arrange to fund us the amount drawn and the outstanding balance of the note would increase. Importantly, the note would be backed by receivables that have already been transferred to the master trust. The interest in the master trust receivables attributable to outstanding securities would increase by the drawn amount, and Discover's "seller's interest" in the master trust receivables would be reduced by the same amount. As consideration for this ongoing commitment, Discover pays an up-front fee and a monthly commitment fee to the conduit.

The clarity we are seeking with respect to the Transitional Period Final Rule relates to the fact that the safe harbor applies to securitizations "for which *beneficial interests* were issued on or before September 30, 2010." In the case of an undrawn conduit, a "beneficial interest" is not technically issued until the draw is made, which in some of our transactions could occur after September 30, 2010. Consequently, we are requesting that the FDIC clarify that the safe harbor set forth in the Transitional Period Final Rule applies to fully or partially undrawn commitments that are entered into prior to September 30, 2010 (or the applicable end date for the transitional safe harbor) that otherwise satisfy the requirements necessary to qualify for the safe harbor provided by the Transitional Period Final Rule. As we have noted above, we are concerned that

---

[5] For further discussion on the undrawn commitment issue, see the ASF's letter to the FDIC dated April 26, 2010 regarding the Transition Period Final Rule

we may not be able to use the new safe harbor for issuances under our existing structures unless remedies are preserved under the Existing Securitization Rule for our current investors. Therefore, if these undrawn conduits are not grandfathered under the Transitional Period Final Rule, Discover would lose its ability to draw on the facilities and, consequently, the contingent liquidity they provide for Discover's consumer lending business.

We believe our position on this issue is consistent with the FDIC's commentary to the NPR that states "the FDIC does not view the inclusion of existing credit lines that are not fully drawn in a securitization as causing such securitization to be an "unfunded securitization." We believe this clarification was in response to the comment from several industry participants (including Discover and the ASF in separate comment letters) pointing to the use of unfunded conduit facilities or VFNs in the market and asking that they should be included in the safe harbor.

### 6.   Permit Commingling to the Extent Negotiated by the Parties

Paragraph (c)(7) of the Proposed Rule provides that "to the extent the sponsor serves as servicer, custodian or paying agent provider for the securitization, the sponsor shall not comingle amounts received with respect to the financial assets with its own assets except for the time necessary to clear any payments received and in no event greater than a two-day period." This proposal provides a useful example of an area where the FDIC needs to distinguish between the various asset-classes that utilize securitization when crafting the final rule. Prohibiting commingling in an amortizing structure (e.g., mortgages and auto loans) may provide a valuable protection for investors. However, prohibiting commingling in a revolving structure (e.g., credit cards) would significantly impact the economics of the issuer without providing a corresponding benefit to the investors.

Many sponsors with revolving trusts, including Discover, utilize a structure that permits commingling for a brief period so long as certain conditions are met – e.g., for so long as the servicer maintains a required short-term rating. Discover is currently required only to trap collections on trust assets in segregated trust accounts that are necessary to satisfy all scheduled payments of principal and interest on our outstanding securities and certain other amounts allocable to investors, while the remaining collections may be commingled with the other assets of Discover Bank. Investors are further protected since the underlying assets in a revolving structure, by definition, do not run off as they do in an amortizing structure like a mortgage or auto loan. The availability of these remaining collections provides Discover (and other sponsors who utilize this structure) with a critical source of liquidity that can be used, among other things, to fund additional consumer lending. Consequently, we believe commingling should be permitted, at least in a revolving trust structure, to the extent it has been agreed upon by the parties to the transaction and is reflected in the program's governing documents.

Separately, the Proposed Rule prohibits commingling for more than "two days" rather than "two business days." In addition to allowing contractually permitted commingling, we request that the FDIC revise the permissible commingling period to two *business* days.

7

7.    **Responses to questions raised by the NPR**

*Question 3: Is the transition period to September 30, 2010, sufficient to implement the changes required by the conditions identified by Pargraph (b) and (c)? In light of New Regulation AB, how does this transition period impact existing shelf registration?*

See Section 2 above for Discover's response to Question 3.

*Question 14: Do you have any other comments on the conditions imposed by paragraphs (b) and (c)?*

Paragraph (c)(6) of the Proposed Rule provides that "the transfer and duties of the sponsor as transferor must be evidenced in a separate agreement from its duties, if any, as servicer, custodian, paying agent, credit support provider or in any other capacity other than transferor." Discover's securitization facility utilizes a Pooling and Servicing Agreement ("PSA") that establishes our master trust and clearly defines and governs Discover Bank's obligations as both transferor and servicer for the facility. The PSA has been one of the key governing documents for our securitization program since October 1993, and we believe that many other issuers in the credit card securitization market utilize this same approach. The PSA is described in the disclosure documentation for Discover's securitization facility and is freely available to investors. Discover does not believe that requiring these duties to be evidenced by separate agreements would provide any additional transparency or protection for investors. Further, satisfying this requirement would require significant time, effort and expense along with the possible additional burden of attaining required certificate and noteholder approval for the necessary amendments to the program documents. We are requesting that our program documents be grandfathered so that we can continue to issue under our existing securitization program without having to undertake this amendment process.

*Question 15: Is the scope of the safe harbor provisions in paragraph (d) adequate? If not, what changes would you suggest?*

See Section 1 above for Discover's response to Question 15.

*Question 16: Do the provisions of paragraph (d)(4) adequately address concerns about the receiver's monetary default under the securitization document or repudiation of the transaction?*

See Section 1 above for Discover's response to Question 16.

*Question 17: Could transactions be structured on a de-linked basis given the clarification provided in paragraph (d)(4)?*

See Section 1 above for Discover's response to Question 17. As stated in Section 1, in order to achieve de-linking between the rating of a securitization and the rating of the sponsor, the FDIC must provide a rule that establishes a clear and achievable set of conditions to qualify for the safe harbor that, if satisfied, will result in a clear commitment from the FDIC not to repudiate the transaction or reclaim the underlying assets.

* * * * * * * * * * *

Discover very much appreciates your consideration of our responses and comments to the questions posed by the NPR and the views of other industry participants.  Should you have any questions concerning our views and recommendations, please do not hesitate to contact me at 224.405.1380.

Sincerely,

Steven Cunningham
Senior Vice President and Treasurer

9

1  David Myers
   4907 Rimwood Drive
2  Fair Oaks, CA 95628

**ORIGINAL FILED**

SEP 0 8 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| David Myers | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Winn Law Group, APC; Brian N. Winn; | ) |
| Naomi S. Rust; Discover Card | ) |
| | ) |
| Defendants. | ) |

Case No. 2:11.CV. 2372 JAM KJN

Complaint

### PRELIMINARY STATEMENT

1.  This is an action for actual and statutory damages plus costs brought by an individual consumer for violations of the Federal Fair Debt Collection Practices Act, 15 U.S.C. $ 1692, et seq.(hereinafter "FDCPA), Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. $1681 et. Seq., and the California Fair Debt Collection Practices Act (hereinafter "Rosenthal Act"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices.

### JURISDICTION

2.  Jurisdiction of this court arises pursuant to 15 U.S.C. 1692k(d), which states that such actions may be brought and heard before "any appropriate United States District Court without regard to the amount in controversy.

3.  Defendants conduct business in the State of California, and therefore, personal jurisdiction is established.

4.  Venue is proper pursuant to 28 U.S.C. 1391 (b) (1).

5.  Declaratory relief is available pursuant to 28 U.S.C. 2201 and 2202.

Con

**PARTIES**

6.   Plaintiff is a natural person residing in Fair Oaks, Sacramento County, California.

7.   Plaintiff is a consumer as that term is defined by 15 U.S.C. 1692a(3), and according to Defendant, Plaintiff allegedly owes a debt as that term is defined by 15 U.S.C. 1692a (5).

8.   Defendants are debt collectors as that term is defined by 15 U.S.C. 1692a (6), and sought to collect a consumer debt from Plaintiff.

9.   The Defendants are companies doing business in California and, upon information and belief located in Orange County, California and Phoenix, Arizona.

10.  Defendants acted through agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subroges, representatives, and insurers.

**FACTS**

11.  The Defendants knowingly obtained a consumer report from a consumer credit reporting agency under false pretenses or knowingly without permissible purpose since the plaintiff had no liability on the alleged debt.

12.  Plaintiff has no contractual obligation to pay the defendants.

13.  Defendants violated both federal and state law by continuing to collect a debt without validation or verification.

14.  Defendants used false representation to collect or attempt to collect the alleged debt.

**FIRST CLAIM FOR RELIEF**

**Violations of Federal Fair Debt Collections Practices Act**

15.  Plaintiff realleges and incorporates paragraphs 1 through 14 as if fully set out.

16.  Plaintiff is a "consumer" within the meaning of the FDCPA.

17.  Defendants are "debt collectors" within the meaning of the FDCPA.

18.  Defendants allege that the Plaintiff owes a "debt" within the meaning of the FDCPA.

19.  Defendants violated the FDCPA, 15 U.S.C. 1692 c(a)(1) by contacting the alleged debtor outside of the prescribed times of after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location.

### SECOND CLAIM FOR RELIEF

#### Violations of the Fair Credit Reporting Act (FCRA)

20. Plaintiff realleges and incorporates paragraphs 1 through 19 above as if set out fully herein.

21. Plaintiff is a "consumer" within the meaning of the FCRA.

22. Defendants pulled a "credit report" within the meaning of the FCRA from a "consumer reporting agency" within the meaning of the FCRA.

23. Defendants violated the FCRA by pulling a credit report under false pretenses or knowingly without permissible purpose.

### THIRD CLAIM FOR RELIEF

#### Violation of the California Rosenthal Act

24. Plaintiff realleges and incorporates paragraphs 1 through 23 above as if set out fully herein.

25. Plaintiff is a "debtor" within the meaning of the Rosenthal Act.

26. Defendants are "debt collectors" within the meaning of the Rosenthal Act.

27. Defendants violated the Rosenthal Act by false representation that the alleged debt may be increased by the addition of attorney fees, investigation fees, services fees, finance charges, or other charges if, in fact, such fees or charges may not legally be added to the alleged existing debt.

28. Defendants made false representation that a legal proceeding has been, is about to be, or will be instituted unless payment of the alleged debt is made.

29. As a direct and proximate cause of the statutory violations above the Plaintiff has suffered emotional distress in the form of loss of productivity, anxiety, depression, fear, worry, loss of happiness, loss of sleep, stress, and anger.

### DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, David Myers, demands a jury trial in this cause of action.

DATED:                                                    RESPECTFULLY SUBMITTED,

                                                         BY:_____
                                                         David Myers

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| David Myers | Winn Law Group, APC; Discover Card; Noami S. Rust |

| (b) County of Residence of First Listed Plaintiff   Sacramento | County of Residence of First Listed Defendant   Orange County |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |

| (c) Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |
|---|---|

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | PERSONAL PROPERTY | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | IMMIGRATION | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☒ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

### FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____